**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| KENNETH EDWARD SPENCE, #2328230, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:21-CV-00616-SDJ-CAN |
| v. | § § | |
| JAMIE TAYLOR, ET AL., | § § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is *pro se* prisoner Kenneth Edward Spence's Complaint [Dkt. 1]. After reviewing the Complaint, all other relevant filings, and in consideration of applicable law, the Court *sua sponte* recommends each of Plaintiff's claims be **DISMISSED**.

**BACKGROUND**

*Procedural History*

On August 4, 2021, *pro se* prisoner Kenneth Edward Spence ("Plaintiff") initiated the instant action alleging violations of his civil rights [Dkt. 1]. This is not the first time Plaintiff has asserted the instant claims. He asserted identical claims against Defendant Jamie Taylor ("Taylor") in *Spence v. Taylor*, Cause No. 4:19-CV-139-ALM-KPJ; that cause was dismissed with prejudice for purposes of *in forma pauperis* proceedings.[1] Plaintiff has three previous strikes and was required to pay the full filing fee in this matter. Plaintiff's original Complaint is the live

---

[1] *See Spence v. Taylor*, No. 4:19-CV-139-ALM-KPJ (E.D. Tex. dismissed Dec. 26, 2019), ECF No. 57 (detailing strikes). Plaintiff has paid the filing fee in full. Plaintiff initially paid $400 to the Clerk of Court; he paid the remaining $2 thereafter [*See* Dkt. 4].

pleading [Dkt. 1].  Plaintiff has not yet served Defendants; however, he has filed numerous requests for assistance with completing service, discussed more fully *infra* [Dkts. 5; 8; 9; 10; 11].

***Plaintiff's Complaint***

Plaintiff's live pleading asserts claims, pursuant to 42 U.S.C. § 1983, against Defendants Taylor, the former Programs Coordinator for the Collin County Detention Facility, and Sheriff Jim Skinner ("Sheriff Skinner") (together, "Defendants") for denial of access to the courts in violation of his First Amendment, Eighth Amendment, and Fourteenth Amendment rights, and certain unidentified state laws [Dkt. 1 at 16-24].[2]  Plaintiff is currently housed in the Travis Unit, TDCJ-CID, but at the time of the accrual of his instant claims, he was a pretrial detainee confined in the Collin County Detention Facility ("CCDF") [Dkt. 1].

Plaintiff specifically pleads four causes of action related to his right of access to courts: (1) denial by Taylor of his access to the CCDF law library for research needed for Plaintiff's civil forfeiture case and other potential civil matters; (2) use of a "screening policy" by Taylor to deny access to the law library; (3) "denial [by Taylor] of softbound legal books" brought from another facility that are Plaintiff's personal property; and (4) Sheriff Skinner's failure to train and investigate Taylor's alleged conduct [Dkt. 1 at 16-24].  Plaintiff's first three claims are brought against Taylor only; the failure-to-train claim is brought against Sheriff Skinner only.  Taylor and Sheriff Skinner are sued in both their official and individual capacities [Dkt. 1 at 1].  As relief, Plaintiff seeks a declaratory judgment that his constitutional rights were violated, compensatory damages "jointly and severally," and punitive damages of $15,000 from each Defendant, as well as any other equitable relief to which he is entitled [Dkt. 1 at 4].

---

[2] Plaintiff only vaguely references state law; he does not identify any specific state law allegedly violated by either Taylor or Skinner.

## SECTION 1915A SCREENING

Plaintiff is currently a prisoner and thus his complaint is subject to preliminary screening and possible *sua sponte* dismissal under 28 U.S.C. § 1915A. *See Smith v. Tom Green Cnty. Jail*, No. 6:17-CV-0055-BL, 2018 WL 3873665, at *7 (N.D. Tex. Aug. 15, 2018) (citing *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998)). Section 1915A "institutes certain screening procedures once a complaint is received by a district court" and is "quite similar to the roles played by Federal Rules of Civil Procedure 11 and 12(b)(6)." *Roberts v. Johnson*, No. 4:19-CV-00114-ALM-CAN, 2019 WL 6534924, at *4 (E.D. Tex. Oct. 28, 2019) (quoting *Martin*, 156 F.3d at 580 n.2), *report and recommendation adopted*, No. 4:19-CV-114, 2019 WL 6527892 (E.D. Tex. Dec. 4, 2019). Pursuant to § 1915A(b)(1), federal courts are mandated to preemptively screen prisoner complaints against government officials or entities to identify cognizable claims and dismiss the complaint or any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted. *Montgomery v. Barr*, 507 F. Supp. 3d 711, 723 (N.D. Tex. 2020) (citing *Coleman v. Tollefson*, 575 U.S. 532, 538-39 (2015)). Dismissal under § 1915A(b) is mandatory if the Court finds the complaint, or any portion of it, meets the § 1915A(b) criteria. *Shugart v. Hoover*, No. 4:17-CV-00633-ALM-CAN, 2018 WL 4600308, at *4 (E.D. Tex. Jan. 26, 2018), *report and recommendation adopted*, No. 4:17-CV-633, 2018 WL 2454676 (E.D. Tex. June 1, 2018), *appeal dismissed*, No. 18-40718, 2018 WL 7142040 (5th Cir. Oct. 10, 2018); *Smithback v. Texas*, No. 3:07-CV-0288-M, 2007 WL 1518971, at *9 (N.D. Tex. May 24, 2007). Relevant here, when a prisoner seeks redress from a governmental officer or employee, "the Court must evaluate the complaint and dismiss it without service of process." *Owens v. Baker*, No. 2:14-CV-0067, 2014 WL 2766542, at *1 (N.D. Tex. June 18, 2014) (citing *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990)).

"A complaint is frivolous if it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Harris v. Bigs*, 381 F. App'x 363, 364 (5th Cir. 2010) (per curiam) (quoting *Martin*, 156 F.3d at 580); *see Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Cheek v. United States*, No. 4:19-CV-737-O, 2020 WL 6162045, at *3 (N.D. Tex. Oct. 21, 2020) (citing *Neitzke*, 490 U.S. at 327). A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And although a *pro se* plaintiff's pleadings must be read more liberally than those filed by an attorney, the complaint must nonetheless allege sufficient facts to demonstrate the plaintiff has at least a colorable claim. *See Bustos v. Martini Club, Inc.*, 599 F.3d 458, 465-66 (5th Cir. 2010).

## ANALYSIS

### *Violations of the Eighth Amendment*

As an initial matter, Plaintiff brings his claims pursuant to 42 U.S.C. § 1983 alleging violation of his First Amendment, Eighth Amendment, and Fourteenth Amendment rights, as well as unspecified state laws. Plaintiff avers he was a pretrial detainee at the time of the events alleged, thus his claims are properly considered under the Fourteenth rather than the Eighth Amendment, which only applies to convicted prisoners. *See McCarty v. Dougherty*, No. 9:17-CV-182, 2021 WL 956225, at *3 (E.D. Tex. Feb. 2, 2021) ("The Fourteenth Amendment ensures the safety of pretrial detainees, while the Eighth Amendment applies to convicted prisoners.") (citing *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019)), *report and recommendation adopted*, No. 9:17-CV-182, 2021 WL 949465 (E.D. Tex. Mar. 12, 2021); *Hurdsman v. Pokluda*, No. A-17-

CV-290-RP, 2020 WL 156598, at *10 (W.D. Tex. Jan. 13, 2020) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc)) ("the Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees."). Any Eighth Amendment claims asserted by Plaintiff should be dismissed.

### *Official Capacity Claims for Money Damages – Eleventh Amendment Immunity*

Plaintiff's claims for money damages against Sheriff Skinner and Taylor in their official capacities should be dismissed as barred by Eleventh Amendment and/or sovereign immunity. "The Eleventh Amendment bars suit in federal court by a private citizen against a state agency or a state actor in her official capacity." *Bird v. Fletcher*, No. 9:19-CV-00220-RC, 2020 WL 2951891, at *5 (E.D. Tex. May 1, 2020), *report and recommendation adopted*, No. 9:19-CV-00220-RC, 2020 WL 2944430 (E.D. Tex. June 2, 2020); *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). For immunity to be waived, Congress may abrogate states' immunity under the Fourteenth Amendment or states may consent to suit, notwithstanding their immunity. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 276-77 (5th Cir. 2005). Congress has not abrogated states' immunity to suit in enacting § 1983, *Sessions v. Rusk St. Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981), and Texas has not consented to such suits. *See, e.g.*, *Chao v. Dars of Tex.*, No. 4:15-CV-169, 2015 WL 6522818, at *5-6 (E.D. Tex. Oct. 27, 2015) (citing *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998)). It follows that the Eleventh Amendment bars recovery of damages for § 1983 claims against state employees in their official capacities. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001). Plaintiff's official capacity claims against Taylor and Sheriff Skinner for damages should thus be dismissed. *See Thompson v. Hayes*, No. 1:12-CV-00037-BL, 2013 WL 12123513, at *2 (N.D. Tex. Jan. 17, 2013) ("The Eleventh Amendment immunity thus extends to Tom Green County Jail officers acting in their official capacity.") (citing *Aguilar*, 160

F.3d at 1054); *Davis v. Allen*, No. 6:12-CV-00033, 2013 WL 271735, at *2 (N.D. Tex. Jan. 24, 2013) (same); *Stiff v. Stinson*, No. 3:12-CV-4998-D, 2013 WL 3242468, at *4 (N.D. Tex. June 27, 2013) (finding plaintiff's "official capacity claims against the Sheriff and the Officer should be dismissed" where plaintiff failed to allege an official policy or custom of the county); *Young v. Akal*, 985 F. Supp. 2d 785, 795 (W.D. La. 2013) ("[T]o the extent the plaintiffs' claims against Sheriff Ackal and Deputy Garcia are asserted against these defendants in their official capacities, such claims are barred by the Eleventh Amendment."); *see also Buras v. Strain*, 338 F. App'x 435, 436 (5th Cir. 2009) (per curiam) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)) ("finding that Sheriff Strain, Warden Peachey, and Captain Hanson were entitled to qualified immunity under the Eleventh Amendment in their official capacities").[3]

### Requests for Declaratory Relief & Punitive Damages

Plaintiff seeks a declaratory judgment that the alleged acts of Taylor and Sheriff Skinner are unconstitutional [Dkt. 1 at 24-25]. Because Plaintiff is no longer housed in and has been transferred from CCDF, his request for declaratory relief related to events at that facility are moot. The Fifth Circuit and district courts in Texas have repeatedly held that transfer to another prison renders moot any claim for declaratory or injunctive relief sought related to penitentiary-specific remedies. *See, e.g.*, *Kennemer v. Parker Cnty.*, No. 4:20-CV-056-P, 2021 WL 1192249, at *10 (N.D. Tex. Mar. 30, 2021) (collecting cases) ("As [plaintiff] is no longer housed in either of these

---

[3] Some courts have found that county officials, including sheriffs and county jail officers, are entitled to Eleventh Amendment immunity. *See Thompson*, 2013 WL 12123513, at *2; *Young*, 985 F. Supp. at 795. However, by contrast, other courts have considered liability of such officials under a theory of municipal liability because "[w]hen a government employee is sued in his or her official capacity the employing entity is the real party in interest for the suit." *Sutherland v. Akin*, No. 4:19-CV-216-O, 2021 WL 462103, at *8 (N.D. Tex. Feb. 9, 2021) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Nevertheless, where the plaintiff has failed to state a viable claim, the official capacity claims should be dismissed under any theory of liability. *See id.* at *9 ("Sutherland's allegations do not implicate any official policy and he does not articulate facts that would support a claim against Wise County or against Tarrant County. Thus, all of Sutherland claims for relief under § 1983 against the defendants in an official capacity must be dismissed for failure to state a claim upon which relief may be granted.").

county jails, however, his claims for injunctive or declaratory relief are moot."), *aff'd*, No. 21-10467, 2022 WL 2610239 (5th Cir. July 8, 2022); *Roussel v. Walker*, No. 5:20CV110, 2021 WL 851495, at *2 (E.D. Tex. Jan. 19, 2021) ("The Fifth Circuit has held that an inmate's transfer to another unit renders his claims for declaratory and injunctive relief moot, unless he can show a reasonable likelihood that he will be transferred back to the facility and again subjected to the allegedly unconstitutional actions."), *report and recommendation adopted*, No. 520CV00110RWSCMC, 2021 WL 848355 (E.D. Tex. Mar. 5, 2021); *Hoyt v. Big Spring State Hosp.*, No. 6:15-CV-0003-BL, 2016 WL 7189844, at *8 (N.D. Tex. Dec. 8, 2016) ("transfer likewise renders [plaintiff's] claim for declaratory relief moot."); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (claims for injunctive and declaratory relief were mooted by transfer to another prison). Here, because the specific declaratory relief sought – that Defendants violated Plaintiff's constitutional rights – are specific to alleged actions by Taylor and Sheriff Skinner while Plaintiff was confined at CCDF, they should be dismissed as moot. *See Awan v. Harmon*, No. 3:17-CV-130-C (BH), 2021 WL 2690088, at *11 (N.D. Tex. June 1, 2021) (denying plaintiff's request "for '[a] declaration that the actions committed (and permitted to be committed)' violate his constitutional rights," as his release from the Bureau of Prisons made such request moot), *report and recommendation adopted*, No. 3:17-CV-130-C-BH, 2021 WL 2688598 (N.D. Tex. June 30, 2021).

Plaintiff also seeks punitive damages from each of Taylor and Sheriff Skinner [Dkt. 24 at 27]. As a general rule, the PLRA "prevents prisoners from seeking compensatory damages for violations of federal law where no physical injury is alleged." *Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 606 (5th Cir. 2008) (citing *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (per curiam)). The Fifth Circuit has "recognized [there are instances] that a prisoner can, absent a

showing of physical injury, pursue punitive or nominal damages based upon a violation of his constitutional rights." *Id.* (citing *Hutchins v. McDaniels*, 512 F.3d 193, 197-98 (5th Cir. 2007) (per curiam)). But "punitive damages may be awarded only when the defendant's conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (quoting *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994)) (internal quotation marks omitted). Here, Plaintiff does not allege he suffered any "specific physical injury." *See Cannon v. Dewberry*, No. 6:17CV144, 2019 WL 2465023, at *12 (E.D. Tex. Jan. 17, 2019) (concluding general allegations are insufficient to allege a "specific physical injury" under § 1997e(e)) (quoting *Herman*, 238 F.3d at 665); *Borgos v. Laperton*, No. 3:16-CV-2936-N-BK, 2017 WL 2912739, at *5 (N.D. Tex. June 10, 2017) (recommending a *pro se* prisoner's request for damages be dismissed because the live pleading "pleads no physical injury"), *report and recommendation adopted*, No. 3:16-CV-2936-N-BK, 2017 WL 2902679 (N.D. Tex. July 7, 2017). Nor has Plaintiff alleged Taylor acted with evil intent or reckless indifference in relation to any of his claims. *See McKnight v. MTC*, No. 3:15-CV-1647-K-BK, 2015 WL 7730995, at *2 (N.D. Tex. Nov. 9, 2015) (recommending a request for punitive damages under § 1983 be dismissed because the plaintiff failed to allege facts demonstrating the defendant's conduct was "motivated by evil intent" or demonstrated "reckless or callous indifference" to the plaintiff's constitutional rights), *report and recommendation adopted*, No. 3:15-CV-01647-K, 2015 WL 7735910 (N.D. Tex. Nov. 30, 2015). Any request for punitive damages should be dismissed.

### Denial of Access to the Courts

"Prisoners have a constitutionally recognized right of access to the courts." *Prescott v. Johnson*, No. 6:18-CV-577, 2022 WL 672694, at *18 (E.D. Tex. Mar. 7, 2022) (citing *Bounds v.*

*Smith*, 430 U.S. 817, 821 (1977)).[4]  Plaintiff's claims for denial of access to the law library are derivative of his more general constitutional right to access to the courts.  Indeed, the Fifth Circuit has explained that the right of access to legal materials is simply an offshoot of the right of access to the courts because the court's main concern is protecting the inmate's ability to prepare a petition or complaint."  *Charles v. Castro*, No. 5:20CV184, 2022 WL 2734041, at *3 (E.D. Tex. Feb. 18, 2022) (citing *Mann v. Smith*, 796 F.2d 79, 83 (5th Cir. 1986)), *report and recommendation adopted*, No. 5:20-CV-00184-RWS, 2022 WL 2132531 (E.D. Tex. June 14, 2022).  "Although 'the precise contours of a prisoner's right of access to the courts remain somewhat obscure,'" *Clewis v. Hirsch*, 700 F. App'x 347, 348 (5th Cir. 2017) (per curiam) (citing *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993)), the Fifth Circuit has clarified that the right of access "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging [the prisoner's] convictions or conditions of confinement."  *Sparks v. Kay*, No. 1:18-CV-00112-BU, 2020 WL 4060570, at *2 (N.D. Tex. June 25, 2020) (quoting *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)), *report and recommendation adopted*, No. 1:18-CV-00112-C, 2020 WL 4059858 (N.D. Tex. July 20, 2020).  The Supreme Court of the United States has rejected attempts to extend the right of access to court to areas beyond challenges to sentences or conditions of confinement, holding:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any *other* litigating

---

[4] "The constitutional right of access to courts is a facilitative right 'designed to ensure that a citizen has the opportunity to exercise his or her legal rights to present a cognizable claim to the appropriate court, and if that claim is meritorious, to have the court make a determination to that effect and order the appropriate relief.'"  *Cooper v. City of Plano*, 4:10-CV-689, 2011 WL 4344193, at *5 (E.D. Tex. Aug. 19, 2011) (quoting *Hind v. Dallas Indep. Sch. Dist.*, 188 F.Supp.2d 664, 673 (N.D. Tex. 2002)), *report and recommendation adopted*, 4:10-CV-689, 2011 WL 4344191 (E.D. Tex. Sept. 14, 2011).

capacity is simply one of the incidental (and perfectly constitutional) consequences
of conviction and incarceration.

*Johnson v. Freshour*, No. 6:18-CV-109, 2018 WL 3849860, at \*3 (E.D. Tex. Mar. 26, 2018)

(quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (emphasis in original)), *report and*

*recommendation adopted*, No. 6:18-CV-109, 2018 WL 3840388 (E.D. Tex. Aug. 10, 2018).

Importantly, before an inmate may prevail on an access-to-the-courts claim, "a plaintiff must show

an actual injury in connection with an identifiable legal proceeding." *Outlaw v. Gomez*, No. A-

20-CV-745-RP, 2020 WL 4926544, at \*1 (W.D. Tex. Aug. 21, 2020) (citing *Lewis*, 518 U.S. at

351-52); *see also Franklin v. Pool*, No. 7:17-CV-082-O, 2020 WL 5366285, at \*2 (N.D. Tex.

Aug. 17, 2020) ("In order to establish a claim for denial of access to the courts, a prisoner must

demonstrate that he suffered some 'actual injury.'").

### Denial of Access to the Law Library – Defending or Pursuing Civil Proceedings

Plaintiff alleges he was prevented from using the CCDF law library to research defenses

to a civil forfeiture suit brought against vehicles he owned (which he ultimately forfeited by

default), and other civil rights suits he desired to file.  Plaintiff's live pleading reflects that, on

December 21, 2018, the State of Texas filed a petition providing notice of seizure and intended

forfeiture of a 2007 Toyota Tundra VIN 5TFRT54107X015288, and a 2008 Dodge Ram VIN

1D7HU18298S547955.[5]  The State identified Plaintiff as the owner of the vehicles and requested

citation and service of the petition upon Plaintiff at the Collin County Detention Facility [Dkt. 1-

1 at 2-5].  Return of service was on file as of January 4, 2019.  On January 24, 2019, an Order for

Partial Judgment was entered, finding that Plaintiff was duly served and cited to appear and answer

[Dkt. 1-1 at 6-7].  Upon failure to answer or appear, Plaintiff was found in default, and the court

---

[5] *State of Texas v. A 2007 Toyota Tundra Vehicle Identification Number 5TFRT54107X015288, A 2008 Dodge Ram Vehicle Identification Number 1D7HU18298S547955*, No. 401-06715-2018 (401st Dist. Ct., Collin Cnty, Tex. Feb. 7, 2019).

entered an order of forfeiture in favor of the State [Dkt. 1-1 at 6-7].  On February 5, 2019, final

judgment was entered [Dkt. 1-1 at 9-10].  At that time, the forfeiture order became appealable.

Plaintiff's complaint admits he was served with the civil forfeiture papers while at CCDF [Dkt. 1

at 7].  Plaintiff filed numerous requests to access the law library at CCDF related to the civil

forfeiture matter (and other civil litigation he desired to pursue), and after they were denied, a

series of grievances.  Pertinent to Plaintiff's claim, on December 11, 2018, Plaintiff made the

following original request for service at the law library:

> I AM IN NEED TO ACCESS THE LAW LIBRARY TO RESEARCH A CIVIL
> CAUSE OF ACTION AGAINST THE PLANO POLICE DEPARTMENT. AS
> PREVIOUSLY STATED IN OTHER REQUESTS TO THIS OFFICE THIS IS
> NOT RESEARCH FOR ANY ALLEGED CRIMINAL VIOLATIONS.

[Dkt. 1-2 at 2].  The same day, the request was closed with the explanation, "Law library is not

currently utilized for this research" [Dkt. 1-2 at 2].   On December 12, 2018, Plaintiff filed

grievance No. 489440, complaining that

> AN UNKNOWN STAFF IS ARBITRARLY DENYING ME ACCESS TO THE
> LAW LIBRARY AND THE COURTS WITH A BOILER PLATE RESPONSE
> REQUESTING SPECIFICITY. THE LAW DOES NOT REQUIRE ME TO BE
> ANYMORE SPECIFIC SO A COLLIN COUNTY STAFF CAN SCREEN THE
> VIOLATION OF MY CIVIL RIGHTS TO DETERMINE MY ELIGIBILITY TO
> RESEARCH THEM AND ULTIMATELY PRESENT THEM TO A COURT.
> RELIEF REQUESTED ... THAT I IMEDIATLY BE GRANTED EQUAL
> ACCESS TO THE LAW LIBRARY TO RESERACH MY CIVIL RIGHTS
> VIOLATIONS WITHOUT SCREENING BY A COLLIN COUNTY STAFF.

[Dkt. 1-2 at 4]. The following response was provided, and the grievance marked closed:

> You are asked to provide basic information regarding your request for access to the
> Law Library. You may submit a request to the Law Library and state the reason for
> your request; include the parties of the civil suit and if this pertains to your current
> confinement. Please keep in mind requests are answered at different times by
> different people and always include all relavant information on each request. All
> request are answered based on the information provided.

[Dkt. 1-2 at 4].  On December 14, 2018, Plaintiff appealed the denial of grievance No. 489440, alleging:

> THE RESPONSE TO MY GRIEVANCES FOR LAW LIBRARY ACCESS ARE VAUGE AND CONTINUE TO PROVIDE NO ACCESS TO THE LAW LIBRARY OR ACCESS TO THE COURTS. AS MENTIONED, ACCESS IS NOT REQUESTED TO RESEARCH ANY ALLEGED CRIMINAL VIOLATIONS. AT PRESENT, THERE ARE NO FILINGS, PARTIES OR CASE NUMBER TO PROVIDE. . . . REQUESTED RELIEF ... TO GAIN IMMEDIATE ACCESS TO RESEARCH POTENTIAL VIOLATIONS OF MY CIVIL RIGHTS.

[Dkt. 1-2 at 5].  The next day, his grievance appeal was denied on the grounds that

> You have continued to submit vague requests and have been asked to provide basic information as to what your request is pertaining to. Requests cannot be answered without information. If there is no party involved; there is nothing to research. If you have nothing to research there is no reason to request access.

[Dkt. 1-2 at 5].  On December 31, 2018, Plaintiff filed another request to access the law library, stating: "THE PLANO POLICE DEPARTMENT HAS SEIZED PERSONAL PROPERTY OF MINE. I NEED ACCESS TO THE LAW LIBRARY TO RESEARCH THE LAW GOVERNING THE DIFFERENT LEGAL CLAIMS BEING ASSERTED," which was denied on January 2, 2019, for the stated reason of "Law library may not currently be utilized for this" [Dkt. 1-2 at 6]. The same day that request was denied, Plaintiff submitted another request to ask which specific individual denied the request, and that person was identified as Taylor [Dkt. 1-2 at 7].  Also on January 2, Plaintiff filed a request asking that the jail "provide [him] with the criteria that governs access to the law library for Collin County inmates," and he received the following response: "federal laws" [Dkt. 1-2 at 7].  That response was also provided by Taylor [Dkt. 1-2 at 7].  On February 18, 2019, Plaintiff filed a request to use the law library, this time stating he needed to work on a civil case where he was proceeding *pro se*, identifying the case number of the civil forfeiture proceeding [Dkt. 1-2 at 8].  This was denied on the grounds that "The Law Library may not currently be utilized for civil cases pertaining to personal litigation" [Dkt. 1-2 at 8].  Taylor

also provided this response and closed the request [Dkt. 1-2 at 10].  The same day, Plaintiff

appealed the denial of his request to research his forfeiture case, which was denied on the basis

that "[r]ecords indicate this is a closed case pertaining to personal litigation. The Law Library is

not currently set up to be utilized for this type of research" [Dkt. 1-2 at 8].  Plaintiff appealed

request No. 513873, stating he believed the responses to his request were met with "stonewalling"

[Dkt. 1-2 at 11].  On March 1, the following response was provided, and the appeal closed:

> The request you referenced, to access the Law Library to research a civil suit
> pertaining to personal litigation, was answered by Jamie Taylor. Please refrain from
> including language intended to be of a threatening nature in your future
> request/complaints/grievances. Thank you, Jamie Taylor

[Dkt. 1-2 at 11].

Plaintiff's law library requests and grievances do not reflect that he sought access to the

law library to research matters related to the conditions of his confinement or to challenge his

criminal conviction.  Plaintiff's right of access to the courts does not extend to research for a civil

forfeiture suit.  District courts of this circuit and other courts of appeal have repeatedly rejected

access-to-courts claims based on a denial of access to the law library where inmates sought to

research civil forfeiture or other civil cases.  *See Varner v. Cerliano*, No. 6:13-CV-636, 2014 WL

2159739, at *5 (E.D. Tex. Apr. 17, 2014), *report and recommendation adopted*, No. 6:13CV636,

2014 WL 2159767 (E.D. Tex. May 22, 2014); *Louis v. Watkins*, No. 3:05-CV-1396-L, 2006 WL

2707429, at *4 (N.D. Tex. Sept. 21, 2006).  In *Garcia v. Wyoming*, the Tenth Circuit considered a

situation like that here, where the defendants were incarcerated at the time the state asserted a civil

*in rem* forfeiture action, and defendants claimed their access to the courts was impeded by the

prison's refusal to provide copies of statutes and cases, and further, that this deprivation resulted

in default in the civil forfeiture proceedings.  587 F. App'x 464, 468 (10th Cir. 2014).  The *Garcia*

court found "the particular action in this case (for the civil *in rem* forfeiture of a car and firearms)

is not necessarily the type of action that can support an access to the courts claim." *Id.* The court specifically addressed the issue of default, finding

> to the extent they claim they did not receive due process before they were deprived of their property, they have not established that they did not receive notice or an opportunity to be heard in the State *in rem* forfeiture proceedings. The record shows that they simply failed to defend against the State proceedings. And, if they wish to challenge the forfeiture proceedings, their remedy lies in the State courts.

*Id.*; *see Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998) (citing *Lewis*, 518 U.S. at 355) ("[Plaintiff's] forfeiture case is not a type of case that is included under the right of inmates' access to courts under *Lewis*, which limits that right to direct or collateral appeals and civil rights cases."); *see also Varner v. Bailey*, No. 1:14-CV-999, 2015 WL 5254292, at *5 (W.D. Mich. Sept. 9, 2015) (quoting *Pegues v. Springrob*, 538 F. App'x 717, 719 (7th Cir. 2013)) ("Plaintiff 'does not articulate any actual injury by specifying what defenses he might have been able to raise against the forfeiture had he been able to access legal materials.'"), *aff'd* (6th Cir. June 30, 2016). Here too, there is no explanation of what defense Plaintiff could have researched to avoid forfeiture, and the simple fact of a default does not demonstrate Plaintiff's right of access to courts was impeded.

### *Denial of Access to the Law Library – Use of a Screening Process/Policy*

Plaintiff also argues Taylor's use of a screening process or policy in granting or denying his access to the library violated his right of access. The law is clear however that "[l]imitations may be placed on library access so long as the regulations are 'reasonably related to legitimate penological interests.'" *Wells v. Thaler*, 460 F. App'x 303, 308 (5th Cir. 2012) (per curiam) (quoting *McDonald v. Steward*, 132 F.3d 225, 230 (5th Cir. 1998)). "[T]he Supreme Court has not extended this right [of access] to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Duenes v. Wainwright*, No. A-17-CV-0726-LY,

2017 WL 6210904, *5 (W.D. Tex. Dec. 7, 2017) (quoting *Brewer v. Wilksinson*, 3 F.3d 816, 821 (5th Cir. 1993)). As set forth *supra*, courts have routinely upheld limitations on prisoners' access to the law library, finding that inadequate access to a law library, does not, in and of itself, establish a denial of access to the courts. *See Norman v. Livingston*, No. H-14-2488, 2016 WL 1274759, at *6 (S.D. Tex. Mar. 31, 2016). Taylor denied Plaintiff's requests to access the law library on the grounds that access is not permitted for use in civil cases for personal litigation. Taylor's responses make clear she inquired whether Plaintiff's requests for access were related to his conditions of confinement at CCDF, and if so, he was directed to resubmit his request with more specificity [Dkts. 1 at 20; 1-2 at 2-7]. The grievance forms attached to the Complaint show that Taylor (and possibly other jail officers) repeatedly asked for Plaintiff to clarify whether his request for access to the library related to his conditions of confinement. Plaintiff has failed to show the use of a screening process or policy in granting or denying his access to the library violated his right of access. *See Charles*, 2022 WL 2734041, at *2 ("Burleson presented no coherent argument showing that he was denied the opportunity to file a non-frivolous legal claim challenging his convictions or the conditions of his confinement as a result of the defendants' actions. The court therefore dismissed Burleson's appeal as frivolous.").

In sum, Plaintiff's claims for denial of access to the library should be dismissed. *See Prescott*, 2022 WL 672694, at *19 ("He has therefore failed to state a plausible claim that he was denied access to the courts. Plaintiff's access to courts claims are dismissed for the failure to state a claim" under § 1915A(b)(1)).

### *Deprivation of Personal Property*

Plaintiff next claims that four legal books he purchased while in custody at another facility were confiscated and not returned to him after his transfer back to CCDF. Plaintiff provides a

series of requests and grievances from May 2019 related to his softcover legal books. For example, on May 20, 2019, Plaintiff submitted a request asking, "I am not allowed to have legal books in my cell that are softbound and purchased from the publisher? If so, please provide me the jail policy that states this" [Dkt. 1-3 at 2]. On May 21, 2019, Sargent D Dyer responded, "Please see your inmate handbook which explains how you may receive books," and the closing remark says "Legal Paper work only sent" [Dkt. 1-3 at 2]. Earlier that day, on May 21, Plaintiff filed a grievance to appeal request No. 548227, filed May 18:

> INFORMAL REQUESTS TO RESOLVE THIS WERE DISREGRDED. SEE 548227. REQUESTING MY SOFTBOUND LAWBOOKS, PRO SE PLEADINGS, RESPONSES, COURT DOCUMENTS, LEGAL NOTES, LEGAL ENVELOPES, AND POSTAGE FROM BULK PROPERTY. NOTE ... THERE IS A FEDERAL COURT ORDER AND DEFENDANTS PLEADINGS THAT REQUIRE A RESPONSE FROM ME WITHIN 5 DAYS I THINK. ALL THESE MATERIALS ARE NECESSARY TO COMPLY WITH THAT OREDER AND OTHER URGENT MATTERS. . . .

[Dkt. 1-3 at 3]. Plaintiff received the following response: "Records indicate you were sent the legal paperwork from your property that complies with facility guidelines. Please see page 4 of your inmate handbook regarding what you may request from your property" [Dkt. 1-3 at 3]. On May 22, 2019, Plaintiff filed another request for the same property, including his softbound books, request No. 549558 [Dkt. 1-3 at 4]. On May 27, 2019, Plaintiff filed a grievance for request No. 549558:

> REGULATION INDICATING I CANNOT HAVE SOFTBOUND LAW BOOKS FROM ANOTHER FACILITY WITH THE SAME RESTRICTIONS OF BUYING THEM FROM A PUBLISHER IS ARBITRARY. AS IS PURPOSEFULLY NOT ALLOWING ME TO HAVE ALL MY LEGAL DOCUMENTS IN MY BULK PROPERTY THAT ARE IN LARGE PART CRITICAL FOR A CRIMINAL AND CIVIL DEFENSE. . . .

[Dkt. 1-3 at 5].

Plaintiff pleads Taylor deprived him of his personal property in reliance upon the CCDF inmate handbook, specifically directing Plaintiff to page 4 "regarding what you may request from your property" [Dkts. 1 at 13; 1-3 at 3]. The handbook section on "Personal Property for Inmates Being Housed" states a detainee may keep only certain personal property items "at the time you are being booked/housed into the facility," a limited list that does not include books other than one religious text [Dkt. 1-4 at 1-2]. Relevant here, the policy states:

> Any legal papers or materials that you have with you upon arrival to this facility will initially be placed in your property. A request can be made for those papers or materials once you are recognized by the court as co-counsel on your pending criminal case. This type of request will be subject for review and approval of Jail Administration on a case by case basis.
>
> Other than the items named in numbers 1 through 5 above, all personal property, commissary, clothing and jewelry you were wearing or had on your person when you were booked into this facility, was tagged and stored. This property will be returned to you when you are released.

[Dkt. 1-4 at 2]. Different from the time of booking/entering the facility, prisoners are allowed certain items of personal property in their cells. The itemized list of personal property that is allowed in a cell includes: "Legal materials, personal letters and religious materials (not to include bible or similar text) [which] must fit in four legal-size manila envelopes total," and "Reading material to include: 1-CCSO book or magazine[;] 5-Total books including personal books and 1 CCSO book" [Dkt. 1-4 at 4].

The Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. "Under the *Parratt/Hudson* doctrine, 'a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy.'" *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quoting *Zinermon*

*v. Burch*, 494 U.S. 113, 115 (1990)). "However, 'postdeprivation remedies,' such as state tort suits, 'do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action.'" *Schwarzer v. Wainwright*, 810 F. App'x 358, 359 (5th Cir. 2020) (per curiam) (quoting *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)). "Conduct is not 'random and unauthorized' for purposes of the *Parratt/Hudson* doctrine if the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of.'" *Id.* (quoting *Zinermon*, 494 U.S. at 138). "In such a case, a § 1983 claim is appropriate." *Id.* The Fifth Circuit recently considered a case with similar allegations to those presented here:

> Schwarzer alleged in his complaint that his Step 1 and Step 2 grievances were denied based on a determination that the seizure of his property was pursuant to policy. He attached the relevant grievance forms to his complaint, and the responses to these grievances by prison officials support Schwarzer's factual allegations about the stated justification for denying his grievances.

*Id.* The Fifth Circuit in *Schwarzer* held that the plaintiff had stated a nonfrivolous claim that should not have been dismissed for failure to state a claim for deprivation of property. *Id.* at 359-60 ("Because the factual allegations of the complaint and the grievance forms indicate that the confiscation of Schwarzer's property was not a random, unauthorized act by a state employee, we conclude that the district court's dismissal as frivolous, pursuant to the *Parratt/Hudson* doctrine, of Schwarzer's claim based on the alleged confiscation of his property was an abuse of discretion.") (citing *Allen*, 388 F.3d at 148-49); *Owens*, 2014 WL 2766542, at *5 (footnote omitted) (citing *Zinermon*, 494 U.S. at 115) ("Plaintiff's allegations present a case where the confiscation occurred under authority of a routine prison administrative directive. His claim falls outside the scope of the *Parratt/Hudson* doctrine, and, therefore, a section 1983 procedural due process claim is not precluded by the existence of an adequate state post-deprivation remedy.").

Considering *Schwarzer*, Plaintiff's claim for deprivation of his personal property likely falls outside the scope of *Parratt/Hudson* at this, the screening, stage.[6]

But such claim nonetheless suffers a fatal flaw; it is barred by limitations. There is no federal statute of limitations for § 1983 actions. *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). Therefore, § 1983 borrows the forum state's general personal injury limitations. *Mejia v. Unknown Officers*, 168 F.3d 485 (5th Cir. 1999). In Texas, the applicable § 1983 limitation is two years. *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018).[7] Although limitations is an affirmative defense, a district court is authorized to dismiss a case (even *sua sponte*) when "it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations." *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006) (citation omitted).

Plaintiff initiated the instant suit on August 4, 2021 [Dkt. 1]. Plaintiff previously asserted a claim for deprivation of his softbound legal books against Taylor in the earlier filed case *Spence v. Taylor*, Cause No. 4:19-CV-139-ALM-KPJ, in his First Amended Complaint (Docket No. 32), establishing Plaintiff was aware of the facts supporting and cognizant that a legal cause of action existed by at least June 7, 2019 (the date the First Amended Complaint was filed). United States Magistrate Judge Kimberly Priest-Johnson summarized Plaintiff's claims in that cause as follows: "Plaintiff states that he is suing Collin County Detention Facility Programs Coordinator Jaime Taylor because Plaintiff was allegedly denied access to courts causing him financial harm. Plaintiff specifically asserts that he was improperly denied access to the jail law library and was denied 'softbound law books from [another] facility.'" *Spence v. Taylor*, No. 4:19-CV-139-ALM-KPJ

---

[6] *But see Dillard v. Davis*, No. 7:19-CV-00081-M-BP, 2022 WL 1096368, at *3 (N.D. Tex. Mar. 24, 2022), *report and recommendation adopted*, No. 7:19-CV-00081-M-BP, 2022 WL 1092929 (N.D. Tex. Apr. 12, 2022).

[7] State law claims analogous to Plaintiff's due process claims "are conversion of personal property and taking or detaining the personal property of another, for which the statute of limitations is the same two-year provision applicable to personal injury claims." *Harris v. Doe*, No. 4:18-cv-638, 2019 WL 5739062, at *4 (N.D. Tex. Nov. 5, 2019) (*citing* TEX. CIV. PRAC. & REM. CODE § 16.003(a)).

(E.D. Tex. dismissed Dec. 26, 2019), ECF No. 57. United States District Judge Amos L. Mazzant, III, dismissed Plaintiff's claim with prejudice for purposes of proceeding *in forma pauperis*, giving him thirty days to pay the filing fee to resume such cause. *Id.* ECF No. 70. Plaintiff did not pay the filing fee and later voluntarily moved to dismiss his appeal of the dismissal. *Id.* ECF No. 80. Plaintiff's claim in the earlier cause is identical to the one asserted in the instant cause. Plaintiff's claim arising from the alleged deprivation or denial of access to his legal books is thus barred by the running of limitations. *See Malone v. Zambrano*, No. 2:19-CV-269, 2020 WL 1445599, at *8 (S.D. Tex. Mar. 24, 2020) ("Plaintiff's denial-of-access-to-courts claim against Sgt. Zambrano, therefore, is barred by the running of the applicable statute of limitations because his complaint was filed" after the two-year statute of limitations ran on his access-to-courts claim), *report and recommendation adopted*, No. 2:19-CV-269, 2020 WL 6132145 (S.D. Tex. Oct. 15, 2020).

***Failure-to-Train Claim – Sheriff Skinner***

The factual allegations related to Sheriff Skinner and the failure-to-train claim are sparse. Plaintiff generally recites the elements of a claim and urges Skinner "knew or should have known" that Taylor was not properly trained [Dkt. 1 at 14-15]. Plaintiff, alternatively, advances that Skinner had an independent duty as sheriff to provide Plaintiff access to the courts [Dkt. 1 at 15]. "To hold a defendant supervisor liable on a theory of failure-to-train-or-supervise, the plaintiff must show (1) the supervisor either failed to supervise or train the subordinate official, (2) a causal link exists between the failure-to-train-or-supervise and the violation of the plaintiff's rights; and (3) the failure-to-train-or-supervise amounts to deliberate indifference." *Prescott*, 2022 WL 672694, at *12 (citing *Brauner v. Coody*, 793 F.3d 493, 501 (5th Cir. 2015)). Plaintiff does not go beyond bare conclusions that Sheriff Skinner was deliberately indifferent to a pattern of denial of access to courts. Nor does Plaintiff allege that Sheriff Skinner was "personally involved in the

alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *See Turner v. Lieutenant Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017) (citing *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008)); *Diggs v. Waybourn*, No. 4:20-CV-706-P, 2021 WL 961676, at *3 (N.D. Tex. Mar. 15, 2021) (dismissing the plaintiff's § 1983 claims under 28 U.S.C. § 1915 against a sheriff and officers for "lack of sufficient personal involvement"). Plaintiff's claims lack any explanation of Sheriff Skinner's personal involvement or knowledge suggesting deliberate indifference. *See Toliver v. Braddy*, No. 4:20-CV-00132-ALM-CAN, 2021 WL 1086176, at *5 (E.D. Tex. Feb. 11, 2021) ("Nothing in Plaintiff's complaint even vaguely suggests that the Sheriff participated in the alleged wrongful acts."), *report and recommendation adopted*, No. 4:20-CV-132, 2021 WL 1061386 (E.D. Tex. Mar. 19, 2021).[8] Plaintiff's failure-to-train claims against Sheriff Skinner, in any capacity, should be dismissed.

### *Plaintiff's Pending Motions to Serve Defendants*

Plaintiff has paid the full filing fee of $402.00 in this case and is not proceeding *in forma pauperis*. It is therefore his obligation to effect service of process upon the Defendants. *See* FED. R. CIV. P. 4; *see also* Eastern District of Texas Local Rule CV-4(a).[9] Pending before the Court are

---

[8] *See Prescott*, 2022 WL 672694, at *13 (dismissing for failure to state a valid claim under § 1915A(b)(1)) ("Plaintiff's allegations are conclusory in nature and do not present a section 1983 failure-to-train-or-supervise claim against Defendants."); *Walter v. Dir., TDCJ-CID*, No. 5:19CV127, 2020 WL 8696243, at *9 (E.D. Tex. Aug. 14, 2020) ("Plaintiff's conclusory allegations of failure to train or supervise do not plead a plausible cause of action"), *report and recommendation adopted sub nom. Walter v. Dir. TDCJ - CID*, No. 5:19-CV-00127-RWS, 2021 WL 807527 (E.D. Tex. Mar. 3, 2021); *Melton v. Hunt Cnty.*, No. 3:14-CV-2202-N, 2019 WL 5067907, at *3 (N.D. Tex. Oct. 8, 2019) (rejecting failure-to-train claim that does not "allege any facts that show that Hunt County or Sheriff Meeks acted with deliberate indifference.").

[9] Under the Federal Rules of Civil Procedure, service of process may be done by following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located, or by doing one of the following: (1) delivering a copy of the summons and complaint to the defendant personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or, (3) delivering a copy of each to an agent authorized by law to receive service of process. FED. R. CIV. P. 4(e). Process may be served under Texas law by persons authorized to serve process, limited to: "(1) any sheriff or constable or other person authorized by law, (2) any person authorized by law or by written order of the court who is not less than eighteen years of age, or (3) any person certified under order of the Supreme Court." TEX. R. CIV. P. 103.

Plaintiff's Motion to the Clerk of Court requesting assistance in serving Defendant Jamie Taylor [Dkt. 5]; Motion that Process of Service be Ordered on Defendants Pursuant to FED. R. CIV. P. 4(c)(3) [Dkt. 8]; Amended Motion that Process of Service be Ordered on Defendants Pursuant to FED. R. CIV. P. 4(c)(3) [Dkt. 9]; Motion for Expedited Ruling [Dkt. 10];[10] and Supplemental Amended Motion that Process of Service be Ordered on Defendants Pursuant to FED. R. CIV. P. 4(c)(3) [Dkt. 11] (collectively, the "Service Motions").  Plaintiff's Service Motions urge that service may be proper upon Robert J. Davis, alleged to be Taylor's spouse or to represent Taylor and/or the Collin County Detention Facility [Dkts. 8 at 2; 9 at 4].  The Court has already once denied this specific request for alternative service [Dkt. 4].  Another avenue proposed is hiring an investigator to procure Taylor's address [Dkt. 11], but Plaintiff indicates his attempts to contact an investigator by mail received no response [Dkt. 11-1 at 2].  Finally, Plaintiff requests the Court consider directing CCDF to provide to the Court "*ex parte* and under seal" the home address or business address of Taylor for the Court to complete the service forms and provide his complaint directly to the U.S. Marshal ("USM") [Dkts. 8 at 4-5; 9 at 6].  Plaintiff's Service Motions should be denied; service is no longer necessary in this cause.  Had the Court determined Plaintiff's claims should not be dismissed, Plaintiff would have been entitled to request the Court designate the USM to serve process for him upon payment of the required fee.  *See* FED. R. CIV. P. 4(c)(3).  Plaintiff would be responsible for payment of the fees associated with such service.

## CONCLUSION AND RECOMMENDATION

Upon review under 28 U.S.C. § 1915A, the Court *sua sponte* recommends that *pro se* Plaintiff Kenneth Edward Spence's claims against Defendants Taylor and Sheriff Skinner in both their official and individual capacity be **DISMISSED**.

---

[10] This motion requests only that the Court conduct the applicable § 1915A screening required prior to service under the PLRA, which the Court has done herein.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

In addition, the Court finds that Plaintiff's Motion to the Clerk of Court requesting assistance in serving Defendant Jamie Taylor [Dkt. 5]; Motion that Process of Service be Ordered on Defendants Pursuant to FED. R. CIV. P. 4(c)(3) [Dkt. 8]; Amended Motion that Process of Service be Ordered on Defendants Pursuant to FED. R. CIV. P. 4(c)(3) [Dkt. 9]; Motion for Expedited Ruling [Dkt. 10]; and Supplemental Amended Motion that Process of Service be Ordered on Defendants Pursuant to FED. R. CIV. P. 4(c)(3) [Dkt. 11] are **DENIED**.

**SIGNED this 1st day of August, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE