UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

KENNETH EDWARD SPENCE          §
                               §
v.                             §
                               §     CIVIL NO. 4:21-CV-616-SDJ
JAMIE TAYLOR, In Her Individual §
and Official Capacity, ET AL.   §

**MEMORANDUM ADOPTING IN PART AND MODIFYING IN PART
THE REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

A former inmate at the Collin County Detention facility claims that he was denied access to the courts, the law library, and his own softbound legal books in violation of his constitutional rights. A federal magistrate judge concluded that his claims should be dismissed under the Prison Litigation Reform Act. The Court agrees with that conclusion.

Therefore, the Court adopts the Magistrate Judge's Report and Recommendation (Report) with a modification described below, (Dkt. #13), overrules all but one of Plaintiff's objections, (Dkt. #18), and orders that the case be dismissed with prejudice. The Court also denies several ancillary motions that Plaintiff filed after the Magistrate Judge issued the Report. *See* (Dkt. #19, #21, #23, #24, #27).

**I. BACKGROUND**

Before he was imprisoned in Travis County, Texas, Plaintiff Kenneth Edward Spence was held as a pretrial detainee at the Collin County Detention Facility (CCD). While there, he was served papers in a civil forfeiture proceeding over two vehicles

1

valued at $45,145. In response to the lawsuit, Spence attempted to obtain access to the jail law library to research the claims and develop his defense.

Spence was repeatedly denied access to the library, however, because the CCD allegedly limited the library's use to claims involving the conditions of an inmate's confinement and did not authorize inmates to use the library for general civil cases. Spence also alleges that he was denied access to four softbound legal books that he purchased on Amazon.

Spence now claims that because he could not properly research the case, he suffered a default judgment as to the two vehicles and their contents, and that he lost his appellate rights. Had he been able to adequately prepare for the case, Spence alleges, he would have known to file an answer to avoid default judgment and would have requested appointment of counsel due to his alleged mental disabilities.

Spence originally asserted claims against the Defendants in this action in February of 2019. But that case was dismissed because Spence had already used up his three strikes under the Prison Litigation Reform Act, which prohibits a prisoner from pursuing lawsuits in forma pauperis (i.e., without paying the usual court fees) when three lawsuits have previously been dismissed as frivolous. *See Spence v. Taylor*, No. 4:19-CV-139, 2019 WL 7183489, at *3–5 (E.D. Tex. Dec. 26, 2019) (dismissing Spence's claims with prejudice for the purposes of in forma pauperis proceedings). In this regard, Spence misrepresented to the Court that he had filed no other lawsuits relating to his imprisonment and that his aliases were "unknown." *Id.*

at *3. In fact, Spence has a well-documented "history of frivolous lawsuits" and has filed cases in Texas federal courts under various aliases. *Id.* at *1, *3.

Spence has now renewed his claims in this action, in which he does not request to proceed on an in forma pauperis basis. (Dkt. #1). Against Defendant Jamie Taylor, the former Programs Coordinator at CCD, he asserts claims for denial of access to the courts and deprivation of personal property. And against Defendant Jim Skinner, the Collin County Sheriff, he asserts claims for denial of access to the courts and for failure to train. Spence has invoked the First, Fourteenth, and Eighth Amendments in support of his claims, which are brought under 42 U.S.C. § 1983. After the Magistrate Judge recommended that these claims be dismissed, (Dkt. #13), Spence objected to the Magistrate Judge's conclusions, (Dkt. #18), and filed several ancillary motions, including three motions for leave to amend the complaint. (Dkt. #19, #21, #23, #24, #27).

## II. LEGAL STANDARD

The Court reviews a magistrate judge's report and recommendation de novo following a timely objection. 28 U.S.C. § 636(b)(1). But to be entitled to de novo review, the objecting party must specifically identify the magistrate judge's findings to which he objects. *Id.* The Court may disregard frivolous, general, or conclusory objections. *Nettles v. Wainright*, 677 F.2d 404, 410 & n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). And the Court need not address objections at length when they simply "rehash" or "mirror" arguments that were already addressed in the report. *See Mark v. Spears*, No. 6:18-CV-309, 2022 WL 363586, at *1 (E.D. Tex. Feb. 7, 2022); *see also*

*Nickelson v. Warden*, No. 1:11-CV-334, 2012 WL 700827, at *4 (S.D. Ohio Mar. 1, 2012) ("[O]bjections to magistrate judges' reports and recommendations are not meant to be simply a vehicle to rehash arguments set forth in the petition.").

### III. DISCUSSION

The Court finds that Spence's claims must be dismissed for the reasons explained in the Report. As an initial matter, the Court notes that Spence has not specifically objected to a number of the Report's conclusions and is therefore not entitled de novo review on those points. As to the Report's conclusion that Spence's claims arise under the First and Fourteenth Amendment instead of the Eighth Amendment and its conclusion that Spence's request for declaratory relief is moot, the objections are silent. And as to the Report's conclusion that Spence failed to state a claim for deprivation of personal property, the objections appear to acknowledge the complaint's deficiencies by stating "Spence withdraws the claim for personal property." (Dkt. #18 at 9).

Read in their entirety, Spence's objections focus on five relatively narrow points. First, Spence objects to the Report's finding that constitutional sovereign immunity bars his claims for money damages. Second, he objects to the Report's finding that the complaint fails to adequately allege evil intent or callous indifference supporting a request for punitive damages. Third, he objects to the Report's finding that a jail inmate enjoys no right of access to a law library to research a civil forfeiture action. Fourth, he objects to the Report's finding that his claims are barred by

limitations. And finally, he objects to the Report's finding that the complaint fails to allege a failure to train claim against Defendant Skinner.[1]

All but one of these objections lack merit and will therefore be overruled. The complaint therefore fails to state a claim upon which relief can be granted and must be dismissed under the Prison Litigation Reform Act, which requires the Court to independently screen prisoner lawsuits against governments and government employees. 28 U.S.C. § 1915A; *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019). The Court also finds that several ancillary motions filed after the Report was issued, including three motions for leave to amend the complaint, must be denied.

## A. Sovereign Immunity

Spence purports to assert claims against Sheriff Skinner and Jamie Taylor, the former Programs Coordinator at CCD, in both their individual and official capacities, for allegedly denying him access to the courts. The Report recommends that any official-capacity claims for money damages against Skinner and Taylor "should be dismissed as barred by Eleventh Amendment and/or sovereign immunity." (Dkt. #13 at 5). However, because Skinner and Taylor acted as county officials, Spence's money damages claims against them are effectively claims against Collin County, a political subdivision of the State of Texas, and not against the State itself. As such, these claims are not barred by the doctrine of state sovereign immunity.

---

[1] Spence also objects to the Magistrate Judge's denial of various motions requesting assistance in serving the Defendants. *See* (Dkt. #13 at 23). Setting aside whether this objection is properly before the Court, it is mooted by the Court's finding that Spence's claims against the Defendants must be dismissed with prejudice.

Immunity from suit "is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments." *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). As the Fifth Circuit has explained, the doctrine of state sovereign immunity, "partially embodied in the Eleventh Amendment,"[2] is grounded in the principle that "individuals may not sue a state—either in its own courts, or courts of other states, or federal courts—without the state's consent." *Russell v. Jones*, 49 F.4th 507, 512 (5th Cir. 2022). Thus, an individual may sue a State only when Congress has abrogated state sovereign immunity through the Fourteenth Amendment or when the State consents to suit. *Id.* (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)). "Absent one of these two conditions, sovereign immunity poses a total bar to 'suit,' not just to liability." *Id.*

The Report correctly notes that state sovereign immunity generally extends not only to suits brought directly against the State, but also to suits brought against state officials performing their official duties. *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) ("[S]overeign immunity also prohibits suits against state

---

[2] As the Supreme Court has explained, the phrase "Eleventh Amendment immunity" is "convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden*, 527 U.S. at 713. That is because, after the Revolutionary War, "the States considered themselves fully sovereign nations," and immunity from suit was "[a]n integral component" of that sovereignty. *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. ----, 139 S.Ct. 1485, 1493, 203 L.Ed.2d 768 (2019) (citation omitted).

officials or agencies that are effectively suits against a state."). But as Spence points out in his objections, sovereign immunity does not extend to a State's "political subdivisions," such as "counties or county officials." *Russell*, 49 F.4th at 512; *see also Cutrer v. Tarrant Cty. Local Workforce Dev. Bd.*, 943 F.3d 265, 269–70 (5th Cir. 2019), as revised (Nov. 25, 2019) (holding that "Tarrant County, the City of Arlington, and the City of Fort Worth are not the State of Texas" for constitutional sovereign immunity purposes); *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 296–97 (5th Cir. 2021) (explaining that although courts have recognized two forms of constitutional sovereign immunity neither protects a political subdivision).

In deciding whether an official serves the State, on the one hand, or a county, on the other, the Court must look at more than the official's title. For example, Texas district-court judges are generally treated as arms of the State for sovereign immunity purposes despite their associations with Texas counties. *See Russell*, 49 F.4th at 512 ("[C]ounty district-court judges are undeniably elected state officials." (quotations omitted)).

Here, there is nothing in the complaint to show that Skinner, a county sheriff, or Taylor, a program coordinator for a county jail, performed state functions in denying Spence access to a law library and legal books. To the contrary, the complaint merely describes these Defendants as enforcing jail policies, which Texas law treats as a local government responsibility. *See* TEX. LOC. GOV'T CODE § 351.001 *et seq.* ("County Jails and Law Enforcement"); *Balli v. Haynes*, 804 F.2d 306, 308 (5th Cir. 1986) ("Under Texas law, county officials are responsible for jail conditions." (citation

7

omitted)); *Dugas v. Jefferson County*, 911 F.Supp. 251, 254 (E.D. Tex. 1995) ("The running of a county jail is generally considered a county function, notwithstanding some degree of state involvement."); *Vidal v. Shunt*, No. CV B-08-395, 2009 WL 10714658, at *1 (S.D. Tex. June 10, 2009) (finding that sovereign immunity did not bar the plaintiff's claims against employees at a county detention center).[3]

The Court acknowledges that sheriffs like Skinner have been treated as state officials in at least some contexts. In *McMillian v. Monroe County*, for example, the Supreme Court treated an Alabama sheriff as a policymaker for the State, not the county, for the purposes of evaluating municipal liability under Section 1983. 520 U.S. 781, 783, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). The decision supported its conclusion with an exhaustive review of Alabama's constitution, statutory code, and case law, the totality of which demonstrated that sheriffs serve the executive department for the State. *Id.* at 786–93.

In other contexts, however, courts have treated sheriffs as county or local officials when they are locally funded and serve primarily local interests. *See Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280–83 (5th Cir. 2002)

---

[3] The cases referenced in the Report are inapposite. For example, the Report cites *Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2001), for the proposition that "the Eleventh Amendment bars recovery of damages for § 1983 claims against state employees in their official capacities." (Dkt. #13 at 5). That is true so far as it goes, but this case involves county officials, not state officials. *Oliver* involved a state jail facility, "owned by the State of Texas through the Texas Department of Criminal Justice—State Jail Division (TDCJ)," 276 F.3d at 739, and likewise the official-capacity claims for damages were made against "TDCJ officers in their official capacity," *id.* at 742. Because the TDCJ is an agency of the State of Texas, the Fifth Circuit has repeatedly extended state sovereign immunity to its officers acting in their official capacity. *See id.* & n.5 ("We twice have held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity."). Because the case at bar involves claims against county officials operating a county jail facility, not state officials with TDCJ, *Oliver* and the similar cases cited in the Report do not apply.

(finding that a Louisiana sheriff was not an arm of the State and therefore could not invoke sovereign immunity); *Mitchell v. Tex. Denton Cty.*, No. 4:18-CV-490, 2021 WL 4497860, at \*10 n.12 (E.D. Tex. Aug. 13, 2021) (collecting cases), *adopted by* 2021 WL 4477694 (E.D. Tex. Sept. 29, 2021). In a 2022 decision, the Fifth Circuit declined to decide how to categorize Texas sheriffs for purposes of municipal liability. *Daves v. Dallas County*, 22 F.4th 522, 541 (5th Cir. 2022) (en banc). But the court noted that it had not found any "provision in Texas law comparable to what the *McMillian* Court used in explaining that Alabama sheriffs were part of the state executive department." *Id.* Likewise here, the Court is unaware of any Texas law that would render Skinner and Taylor officers of the State in regard to Spence's claims, rather than county officials.

In sum, because Spence's complaint focuses on Skinner's and Taylor's alleged misconduct in operating a county jail facility, which Texas law treats as a county function and responsibility, state sovereign immunity is not implicated and does not bar Spence's claim. Accordingly, Spence's first objection is sustained.

## B. Punitive Damages

The Court finds that Spence has failed to state a claim for punitive damages against Skinner and Taylor. As explained in the Report, a plaintiff cannot recover punitive damages in a Section 1983 action for violations of a constitutional right without establishing that the defendant acted with either "evil intent" or "callous indifference" to the plaintiff's rights. *Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 513 (5th Cir. 2022) (quotations omitted); *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003) (quotations omitted). And here, the complaint includes only

9

conclusory allegations that the Defendants acted with that level of intent. These conclusory allegations are not entitled to the same presumption of truth that is afforded to factual allegations in evaluating the sufficiency of a plaintiff's complaint. *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 443 (5th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). The Court must therefore overrule Spence's second objection and dismiss his claims for punitive damages against Skinner and Taylor.

## C. Access to the Courts

The Court must also dismiss Spence's claim for denied right of access to the courts because that right does not extend to research for a traditional in rem forfeiture proceeding. The right of access to the courts is grounded in the First and Fourteenth Amendments. *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019) (citing *Brewer v. Wilkinson*, 3 F.3d 816, 820–21 (5th Cir. 1993)). Although it guarantees prisoners a reasonably adequate opportunity to file nonfrivolous legal claims, the right of access to the courts is "not without limit." *Id.* The prisoner must demonstrate not only that the defendants "hindered his efforts to pursue a nonfrivolous action," but also that he suffered an "actual injury" as a result. *Id.* (quotations omitted).

This actual injury requirement is "not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Instead, a prisoner can invoke the right of access to the court only in cases "attack[ing] [his] sentence" or "challeng[ing] the conditions of [his] confinement." *Id.* at 355. As the Supreme Court explained in *Lewis*, the right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating

10

engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* In keeping with this principle, a prisoner may invoke the right of access to the courts in direct appeals from a criminal conviction, habeas petitions, and certain civil rights actions. *Id.* at 354. But as to the "[i]mpairment of any *other* litigating capacity," that is treated as an "incidental" and "perfectly constitutional" consequence of conviction and incarceration. *Id.* at 355 (emphasis original).

Consistent with these rules, federal courts have declined to apply the constitutional right of access in a wide range of general civil cases. *See, e.g.*, *Clewis v. Hirsch*, 700 F.App'x 347, 348 (5th Cir. 2017) (refusing to apply the constitutional right of access to the courts to legal materials related to a father's succession); *Gardner v. DeFriend*, 699 F.App'x 364, 364–65 (5th Cir. 2017) (same as to legal materials related to a civil protective order); *Queen v. Parish of Calcasieu*, 479 F.App'x 625, 626 (5th Cir. 2012) (same as to to excessive force claims unrelated to the conditions of a prisoner's confinement).

And several federal courts—including at least two federal appeals courts—have either held or strongly suggested that the right of access to the courts does not apply to in rem forfeiture proceedings specifically. *See Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998) ("Wilson's forfeiture case is not a type of case that is included under the right of inmates' access to courts under *Lewis* . . . ."); *Garcia v. Wyoming*, 587 F.App'x 464, 468 (10th Cir. 2014) (finding that an in rem forfeiture proceeding was "not necessarily the type of action that can support an access to the courts claim"); *Varner v. Bailey*, No. 1:14-CV-999, 2015 WL 5254292,

11

at *1 (W.D. Mich. Sept. 9, 2015), ("[A]lthough the Sixth Circuit has not so ruled, other federal circuit courts have found that a prisoner's lack of access to legal materials to challenge civil forfeiture actions does not create a constitutional claim for denial of access to the courts."), *aff'd*, No. 15-2368 (6th Cir. June 30, 2016).

This Court agrees that the right of access to the courts does not extend to legal research for traditional in rem forfeiture proceedings. In rem forfeiture proceedings are civil actions, as opposed to criminal, and directed toward property, not people. *United States v. Ursery*, 518 U.S. 267, 274–78, 283, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). These proceedings have historically been classified as "remedial" or "nonpunitive." *See United States v. Bajakajian*, 524 U.S. 321, 331, 118 S.Ct. 2028, 2035, 141 L.Ed.2d 314 (1998) ("Traditional *in rem* forfeitures were . . . not considered punishment against the individual for an offense."); *but see Austin v. United States*, 509 U.S. 602, 618, 113 S.Ct. 2801, 2803, 125 L.Ed.2d 488 (1993) (finding that civil forfeiture proceedings "historically have been understood, at least in part, as punishment"). And although these proceedings are subject to some procedural safeguards (including the right to a hearing and the prohibition against excessive fines), they are not subject to the same procedural safeguards as a criminal action (such as the right to counsel or the prohibition against double jeopardy).[4]

---

[4] *Compare United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 46, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (recognizing a right to notice and an opportunity to be heard); *Austin*, 509 U.S. at 604 (applying the prohibition against excessive fines), *with United States v. $70,594.00 U.S. Currency*, 32 F.3d 566, 1994 WL 442434, at *3 (5th Cir. 1994) (per curiam) (finding no right to counsel in a civil forfeiture case); *Ursery*, 518 U.S. at 270–71 (refusing to apply the prohibition against double jeopardy).

Because in rem forfeiture proceedings are distinct from any parallel criminal convictions and are asserted against property only, Spence cannot say that these proceedings are bound up with his sentence or conditions of confinement, as required to support a claim for access to the courts. Spence cites to no cases reaching a contrary result except cases decided before the Supreme Court's 1996 *Lewis* decision. His third objection is overruled.[5]

## D. Statute of Limitations

The Court must also overrule Spence's fourth objection as moot. He asserts that he is of unsound mind and that the limitations period for his claims should therefore be tolled. *See* (Dkt. #18 at 9) (citing TEX. CIV. PRAC. & REM. CODE § 16.001(a) ("For the purposes of [limitations on personal actions], a person is under a legal disability if the person is . . . (2) of unsound mind.")). But the Report found only one claim to be barred by limitations: that for deprivation of personal property. And as explained above, Spence purported to withdraw that claim in his objections. *Supra* Part III. The Court will dismiss the deprivation of property claim without regard to the applicability of any tolling rule based on Spence's alleged mental disabilities.

---

[5] Of note, the forfeiture proceeding instituted against Spence arose under a criminal procedural rule instead of a civil one. (Dkt. #1-1). But even so, forfeiture proceedings in Texas are "distinctly civil in nature." *$1,411.26 US Currency v. State*, No. 03-22-00011-CV, 2023 WL 4828401, at *2 (Tex. App.—Austin July 28, 2023, no pet. h.) (quotations omitted). In any event, Spence never requested access to the jail library for a criminal proceeding—only for what he represented to the jail as a civil matter—and alleged in his complaint that he was subject to a civil forfeiture proceeding.

## E.  Failure to Train

The Court must dismiss not only the access to courts and deprivation of property claims, but also the claim for failure to train advanced against Sheriff Skinner. To state a claim for failure to train or failure to supervise against an individual supervisor, the plaintiff must establish the following elements: (1) that the supervisor failed to supervise or train a subordinate official; (2) that the failure is "causal[ly] link[ed]" to a violation of the plaintiff's rights; and (3) that the failure to train or supervise amounts to deliberate indifference. *McCully ex rel. Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quotations omitted); *see also Brauner v. Coody*, 793 F.3d 493, 501 (5th Cir. 2015).

Far from satisfying these elements, the complaint does not even establish Sheriff Skinner's personal involvement in the facts of this case or in what way he failed to train and supervise Taylor—much less how these alleged failures caused any violation of Spence's rights or amounted to deliberate indifference. True, Texas treats county sheriffs as "keeper[s] of the county jail" and holds them responsible for "supervision and control over the jail." TEX. LOC. GOV'T CODE § 351.041; *Lewis v. Williamson County*, No. 1:21-CV-00074-LY-SH, 2021 WL 5167338, at *4 (W.D. Tex. Nov. 5, 2021). But that does not mean that a sheriff is automatically liable for all wrongdoing that happens in a jail by virtue of his role as supervisor. *Marquez v. Quarterman*, 652 F.Supp.2d 785, 790 (E.D. Tex. 2009) ("[T]he doctrine of *respondeat superior* does not apply in § 1983 actions."). Contrary to Spence's assertions, the complaint's deficiencies flout the federal pleading standard, not a "heightened

14

pleading standard," (Dkt. #18 at 10), and his objection is overruled. In any event, because Spence failed to state a claim for access to the courts or deprivation of property, it follows that he cannot state a claim against Skinner for causing those alleged violations by a failure to train or supervise.

## F. Ancillary Motions

Spence responded to the Report by filing three motions for leave to amend his complaint. And he filed two additional motions requesting the Court to expedite its ruling. These latter motions will be denied as moot. And the motions for leave to amend the complaint will be denied as futile. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (holding that a proposed amended complaint is futile when it would fail to state a claim upon which relief can be granted).

The proposed amended complaints are futile because they are founded on the same misapprehension of law embedded in the original pleading. They presume that Spence enjoys a constitutional right of access to a jail law library for research in a civil forfeiture proceeding. But Supreme Court precedent makes plain that the right of access to the courts extends only to cases involving a prisoner's conviction or the conditions of his confinement. *See supra* Part III(C). Even if Collin County is added as a party, as the amended pleadings attempt to do, this core deficiency would require dismissal of Spence's claims.

Likewise, Spence has not salvaged his case by framing it as a selective enforcement action. To state a claim for selective enforcement under the Equal Protection Clause, a plaintiff must establish that the defendant's enforcement decisions were "deliberately based upon an unjustifiable standard such as race,

15

religion, or other arbitrary classification." *Knapp v. U.S. Dep't of Agric.*, 796 F.3d 445, 467 (5th Cir. 2015) (quotations omitted). But here, the proposed amended pleadings do not allege any facts demonstrating that the Defendants enforced the CCD library-access policies based on an unjustifiable standard.

To the contrary, the amended pleadings fault the Defendants primarily for allowing prisoners to access the library for criminal cases but not for civil cases, which is consistent with federal law. The amended pleadings also suggest that another inmate was allowed to research forfeiture proceedings, whereas Spence was not. But "[s]ome selectivity in enforcement is not in itself a constitutional violation." *Id.* (quoting *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 1999)). Without facts demonstrating that CCD's selectivity arose from an impermissible motive as opposed to a legitimate need (for example, a scheduling or logistical need), the amended pleadings fail to state a plausible claim upon which relief can be granted.

## IV. CONCLUSION

It is, therefore, **ORDERED** that the Report and Recommendation of the United States Magistrate Judge, (Dkt. #13), should be and is hereby **ADOPTED in part** and **MODIFIED in part**. The Court adopts the Report's findings and conclusions that Plaintiff Kenneth Edward Spence failed to state claims against the Defendants under the First or Fourteenth Amendments for punitive damages, access to the courts, deprivation of personal property, or failure to train. The Court modifies the Report by concluding that constitutional sovereign immunity does not bar Plaintiff's claims.

Plaintiff Kenneth Edward Spence's Civil Rights Complaint, (Dkt. #1), is **DISMISSED with prejudice**. The following motions are **DENIED**: Plaintiff's Motion for Leave to File an Amended Complaint, (Dkt. #19); Plaintiff's Motion for Leave to File Second Amended Complaint, (Dkt. #21); Plaintiff's Motion for Leave to File Third Amended Complaint, (Dkt. #24). And the following motions are **DENIED as moot**: Plaintiff Kenneth Spence's Motion for an Expedited Ruling, (Dkt. #23); the Motion to Compel a Ruling, (Dkt. #27).

**The clerk is directed to close this civil action.**

**So ORDERED and SIGNED this 27th day of September, 2023.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE